**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Mario Avila, individually and as a representative of the classes,<br><br>　　　　Plaintiff,<br><br>v.<br><br>NOW Health Group, Inc., d/b/a NOW Foods, and Argus Services, Inc.,<br><br>　　　　Defendants. | Case No.: 14-cv-1551<br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT<br>(JURY TRIAL DEMANDED)** |

Comes now Plaintiff Mario Avila ("Plaintiff"), by and through his attorneys, and alleges as follows:

## INTRODUCTION

1. This consumer class action is brought under the Fair Credit Reporting Act ("FCRA") against an employer who manufactures food products and the consumer reporting agency it uses to perform background checks on employees and job applicants.

2. The employer routinely violated the FCRA's basic protections by failing to obtain the proper authorization to conduct background checks as required by the FCRA.

3. The credit reporting agency also violated the FCRA by generating background reports that included criminal charges that were dismissed more than seven years before the date of the report.

4. As these violations were committed willfully and pursuant to uniform policies and procedures, Plaintiff asserts class claims under Rule 23, and seeks statutory damages, costs, and attorneys' fees.

1

## THE PARTIES

5. Plaintiff Mario Avila ("Plaintiff" or "Avila") is an individual person and a resident of Hickory Hills, Illinois, which is in Cook County.

6. Defendant NOW Health Group, Inc. does business as NOW Foods and is an Illinois corporation headquartered in Bloomingdale, Illinois ("NOW Foods"). NOW Foods manufactures and distributes "natural" foods, dietary supplements, and other related products throughout the United States including in this District. NOW Foods has over 900 employees.

7. Defendant Argus Services, Inc. is an Illinois corporation headquartered in Chicago, Illinois ("Argus"). Argus regularly engages in the business of assembling or evaluating consumer credit and criminal background information on job applicants and employees for employers for a fee. As such, Argus is a consumer reporting agency ("CRA") and the reports it generates for employers are "consumer reports" under the FCRA.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because both Defendants are headquartered and operate in this District.

## STATUTORY BACKGROUND

9. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

10. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

11. Congress was particularly concerned about the use of consumer reports by employers to deny otherwise qualified job applicants or to take other adverse actions against employees. Accordingly, Congress required employers to make a clear and conspicuous written disclosure to employees and job applicants, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes. 15 U.S.C. §1681b(b)(2). This is commonly referred to as the "stand-alone disclosure" requirement.

12. The FCRA stand-alone disclosure requirement ensures that employees and job applicants know when reports about them are being generated. This notice is one of many elements of the FCRA that combine to ensure that consumers are aware that consumer reports are generated about them, that they know their rights, and that they have the opportunity to dispute errors in their reports. 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse employment action notice requirement); § 1681b(4)(B) (notification of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681d(a) (disclosure of investigative report); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding the use of public record information); § 1681h (form and conditions of disclosure); § 1681m(a) (notice of adverse action).

13. The FCRA's regulation of consumer reports is critical because, according to the Federal Trade Commission, up to 26% of such reports contain material errors.[1] Without knowledge that reports are being generated about them, employees cannot take steps to correct inaccuracies in those reports.

14. As discussed below, NOW Foods routinely violated the FCRA by failing to provide the required stand-alone disclosure to employees and job applicants.

15. Argus violated the FCRA by including in its consumer reports adverse items of information, such as records of dismissed charges, that antedate the report by more than seven years. The FCRA clearly prohibits the inclusion of this information in consumer reports. *See* 15 U.S.C. § 1681c(a)(2) (prohibiting the inclusion of "[c]ivil suits, civil judgments, and records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period") and § 1681c(a)(5) (stating that "no consumer reporting agency may make any consumer report containing any of the following items of information: Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years").

## ALLEGATIONS RELATING TO NOW FOODS

16. Avila has been working for over 12 years in the food processing and manufacturing business in and around the Chicago metropolitan area.

17. While he was working in the industry, Avila saw a NOW Foods help wanted advertisement on the website www.careerbuilder.com. Avila completed the online application, and then NOW Foods asked Avila to come in for an interview. NOW Foods also required Avila to complete another application before coming in for the interview.

---

[1] U.S. Federal Trade Commission, Report to Congress under Section 319 of the Fair and Accurate Credit Transactions Act of 2003 (December 2012), available at www.ftc.gov/os/2013/02/130211factareport.pdf, last accessed March 28, 2013.

18. In addition to the written application, Avila was required to sign an untitled document ("NOW Foods Statement") that had two sections, one captioned "Equal Opportunity Statement" and the second captioned "Pre-Employment Statement." A true and correct copy of this untitled document is attached hereto as Exhibit A.

19. The portion of the NOW Foods Statement which is titled as the "Equal Opportunity Statement" sets forth NOW Foods' equal opportunity policy. The portion of the NOW Foods Statement which is titled as the "Pre-Employment Statement" sets forth several paragraphs, each dealing with a separate topic. While the Pre-Employment Statement portion of the NOW Foods Statement does mention that NOW Foods will obtain a background report on the applicant, the Pre-Employment Statement also sets forth a number of items completely unrelated to consumer reports. Specifically, the Pre-Employment Statement states that:

   a. employment with NOW Foods would be at will;

   b. any misstatement or omission on the application would be grounds for termination; and

   c. the applicant agrees to comply with company policy and procedure.

*See* Exhibit A.

20. NOW Foods also required Avila to sign a "Background Report Authorization Form." A true and correct copy of the Background Report Authorization Form is attached hereto as Exhibit B. In addition to authorizing NOW Foods to obtain a background report, this form also included extraneous information, including a provision that purports to release NOW Foods and Argus from liability. Specifically, the form states:

> I release NOW Health Group, Inc., Argus Services, Inc., and their agents from all liability or claims of any kind that I may have arising from the "consumer report" or "investigative consumer report", the information it contains or the investigation from which such information is compiled. I

> further release all persons or entities from liability or claims that I may have arising from the furnishing of any information contained in the "consumer report" or "investigative consumer report".

*See* Exhibit B.

21. Neither the NOW Foods Statement, nor the Background Report Authorization Form, constitute a stand-alone disclosure as required by 15 U.S.C. § 1681b(b)(2). This section requires that before a user of consumer reports can procure a report for employment purposes, the user must provide the subject of the report with a "clear and conspicuous disclosure… **in a document that consists solely of the disclosure**, that a consumer report may be obtained for employment purposes" (emphasis added).

22. More than fifteen years ago, the Federal Trade Commission ("FTC") emphasized that including a liability waiver in the authorization form, as Argus and NOW Foods did here, is a violation of the FCRA. *Letter from William Haynes, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO Accufax Div.* (June 12, 1998), available at 1998 WL 34323756 (explaining that "inclusion of a . . . waiver in a disclosure form will violate Section [1681b(b)(2)(A)] of the FRCA, which requires that a disclosure consist 'solely of the disclosure that a consumer report may be obtained for employment purposes'").

23. Courts that have addressed liability waivers placed in authorization forms have agreed with the FTC that including such a waiver violates the FCRA's stand-alone disclosure requirement. *Singleton v. Domino's Pizza*, No. 11-1823, 2012 WL 245965 at *9 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Reardon v. Closetmaid Corp.*, No. 2:-8-cv-01730, 2013 WL 6231606 at *10-11 (W.D. Pa. Dec. 2, 2013)

(finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance").

## ALLEGATIONS RELATING TO ARGUS

24. NOW Foods offered Avila a position, but then requested a background check on Avila from Argus. In response to NOW Foods' request, Argus generated and sent to NOW Foods a consumer report dated August 14, 2013. A copy of this report is attached here to as Exhibit C.

25. The report furnished by Argus to NOW Foods included criminal charges against Avila that were dismissed and which antedated the report by more than seven years, in violation of 15 U.S.C. § 1681c(a). Specifically, Argus reported two dismissed charges that were brought against Avila in 1994 – almost twenty years before the report was generated and when Avila was nineteen years old.

26. As Argus knows, it is routine for prosecutors to charge multiple counts against a defendant. In many cases – if not most cases – at least one or more of the charged counts is dismissed. It is also commonplace when multiple charges are brought that the most serious charge is dismissed and the defendant pleads guilty to or is found guilty of a lesser charge.

27. While this is routine, and in spite of the FCRA's clear prohibition on the reporting of any adverse items of information older than seven years other than convictions for crimes, it is Argus' business practice to report *all* the charges brought against a defendant, including dismissed charges, without regard to how old the dismissed charges are.

28. As a practical matter, Argus' practice results in the most serious *but dismissed* charges being included in Argus' reports. While this practice is more efficient for Argus because it requires Argus to do less work prior to providing its customers with consumer reports, the

practice is highly prejudicial to the subjects of Argus' reports, and is precisely the outcome Section 1681c(a) is designed to prevent.

29. Argus' practice of routinely reporting these dismissed charges, even when the dismissed charges antedate the report by more than seven years, cannot be reconciled with the plain language of 15 U.S.C. §§ 1681c(a)(2) and 1681c(a)(5). 15 U.S.C. § 1681c(a)(2) prohibits the inclusion of "[c]ivil suits, civil judgments, and records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period." 15 U.S.C. §1681c(a)(5) states that "no consumer reporting agency may make any consumer report containing any of the following items of information: Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years."

30. Argus' practices violate a fundamental protection afforded to employees under the FCRA, are contrary to the unambiguous language of the statutes, and are counter to longstanding judicial and regulatory guidance.[2] *See, e.g., Serrano v. Sterling Testing Sys., Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008) (holding FCRA prohibits even *alluding to* existence of unreportable adverse information). *See also Memorandum of the United States of America in Support of the Constitutionality of § 1681c of the Fair Credit Reporting Act at 17, Dowell v. Gen. Info. Servs., Inc.,* No. 13-CV-02581-L-BGS (S.D. Cal., Feb. 20, 2014) (stating that dismissed charges associated with a conviction may not be reported under the Fair Credit Reporting Act).

31. Thus, by systematically reporting dismissed criminal charges that antedate the report by seven years, Argus willfully violated 15 U.S.C. § 1681c(a).

---

[2] *See, e.g.,* FTC, *Forty Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations*, July 2011, at 55 ("Even if no specific adverse item is reported, a CRA may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in this subsection.").

32. Based on the consumer report generated by Argus, NOW Foods withdrew its offer to Avila shortly before he was to begin work.

## CLASS ALLEGATIONS

33. Plaintiff asserts Count I against NOW Foods on behalf of himself and the **Improper Disclosure Class**, defined as:

> All individuals on whom NOW Foods obtained a consumer report for employment purposes in the two years predating the filing of this Complaint and continuing through the date the class list is prepared.

34. Plaintiff asserts Count II against Argus on behalf of the **Outdated Information Class**, defined as:

> a) All individuals on whom Argus prepared a consumer report for employment purposes in the two years predating the filing of this Complaint and continuing through the date the class list is prepared; and
>
> b) Whose report contains criminal or driving records other than records of criminal conviction that antedate the report by more than seven years.

35. Numerosity: The Classes are so numerous that joinder of all Class members is impracticable. NOW Foods has over 900 employees, most of who, if not all, are members of the Classes. In addition, Argus provides background screening services to a number of employers in addition to NOW Foods and the number of additional Class members included in the Outdated Information Class runs well into the hundreds, if not substantially more.

36. Typicality: Avila's claims are typical of the Class members' claims. The FCRA violations committed by NOW Foods and Argus were committed pursuant to uniform policies and procedures, and Defendants treated Avila in the same manner as other Class members in accordance with their standard policies and practices.

37. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation.

38. <u>Commonality</u>: Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes.

39. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Classes do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendants by any members of the Classes on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

## **COUNT I**
### (*Failure to Provide Stand Alone Disclosure Against NOW Foods*)

40. NOW Foods violated the FCRA by procuring consumer reports on Avila and the other Improper Disclosure Class members without making the stand alone disclosure required by the FCRA. *See* 15 U.S.C. § 1681b(b)(2).

41. NOW Foods acted willfully and in deliberate or reckless disregard of its obligations and the rights of Avila and the other Improper Disclosure Class members. NOW Foods' willful conduct is reflected by, *inter alia*, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2). In addition, NOW Foods' conduct is contrary to long-standing regulatory guidance and caselaw. *See Letter from William Haynes, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO Accufax Div.* (June 12, 1998), available at 1998 WL 34323756 (explaining that "inclusion of a . . . waiver in a disclosure form will violate Section [1681b(b)(2)(A)] of the FRCA, which requires that a disclosure consist 'solely of the disclosure that a consumer report may be obtained for employment purposes'"); *Singleton*, 2012 WL 245965 at *9 ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Reardon*, 2013 WL 6231606 at *10-11 (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"); *Pintos*, 605 F.3d at 677.

42. Avila and the Improper Disclosure Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Avila and the Improper Disclosure Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Avila and the Improper Disclosure Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

# COUNT II
### (*Reporting Adverse Information Other Than Records of Conviction Which Antedate the Report by More Than Seven Years, Against Argus*)

43. Argus violated the FCRA by reporting adverse information other than records of conviction regarding Avila and members of the Outdated Information Class which antedated the report by more than seven years. *See* 15 U.S.C. §§ 1681c(a)(2) and (5).

44. Argus acted willfully and in deliberate or reckless disregard of its obligations and the rights of Avila and the other Outdated Information Class members.

45. Argus' willful conduct is reflected by, *inter alia*, the following:

   a. The FCRA was enacted in 1970; Argus has had over four decades to become compliant;

   b. Argus is in the business of generating consumer reports, and has access to legal advice through its own general counsel's office and outside employment counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

   c. Argus' conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

   d. Despite the pellucid statutory language, Argus has adopted a policy of reporting dismissed charges that antedate the report by more than seven years.

46. Avila and the Outdated Information Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Avila and the Outdated Information Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Avila and the Outdated Information Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

47. WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for relief as follows:

a. Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

b. Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Classes;

c. Issuing proper notice to the Classes at Defendants' expense;

d. Declaring that Defendants committed multiple, separate violations of the FCRA;

e. Declaring that Defendants acted willfully, in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f. Awarding statutory and punitive damages as provided by the FCRA;

g. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

48. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the classes demand a trial by jury.

Respectfully submitted,

Dated: April 30, 2014    /s/Daniel C. Bryden
NICHOLS KASTER, PLLP
E. Michelle Drake, MN Bar No. 0387366*
Daniel C. Bryden, MN Bar No. 0302284*
     *admitted *pro hac vice*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Telephone: (612) 256-3200
Facsimile: (612) 215-6870
drake@nka.com
dbryden@nka.com

THE PRINZ LAW FIRM, P.C.
Kristen Prinz (ARDC #6291900)
Jessica Fayerman (ARDC #6286140
One East Wacker Dr., Suite 550
Chicago, IL 60601
Telephone: (312) 212-4450
Facsimile: (312) 284-4822
kprinz@prinz-lawfirm.com

ATTORNEYS FOR PLAINTIFF AND THE CLASS

## **CERTIFICATE OF SERVICE**

I, Daniel C. Bryden, hereby certify that on April 30, 2014, I filed the foregoing FIRST AMENDED COMPLAINT via the Court's CM/ECF system, which will send a notice of electronic filing to counsel of record for Defendants.

Date: April 30, 2014         /s/Daniel C. Bryden
                             Daniel C. Bryden